# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY GRACE MARIE MARAGLINO,<br><br>        Plaintiff,<br><br>    v.<br><br>J. ESPINOSA, et al.,<br><br>        Defendants. | 1:20-cv-00825-AWI-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF No. 18.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

**I.      BACKGROUND**

Dorothy Grace Marie Maraglino ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On June 15, 2020, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On September 13, 2021, the Court dismissed the Complaint for failure to state a claim, with leave to amend.  (ECF No. 10.)  On February 18, 2022, Plaintiff filed the First Amended Complaint which is now before the court for screening.  28 U.S.C. § 1915.  (ECF No. 18.)

## II.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III.  SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Central California Women's Facility (CCWF) in Chowchilla, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants M. Pallares (Warden)[1], Captain Dunn, Officer Doe

---

[1] Plaintiff alleges in the First Amended Complaint that Warden Pallares now holds the position of warden which was held by J. Espinosa at the time of the incident. The warden is responsible

(Building 516), and Connie Shelby (Inmate and employee of CDCR) (collectively, "Defendants").

A summary of Plaintiff's allegations follows:

On June 18, 2018, Plaintiff was asleep in her bunk in building 516, Room 3, when inmate Connie Shelby entered Plaintiff's room and sexually assaulted her. Shelby got on top of Plaintiff, held her down, began to kiss, suck and bite Plaintiff on the back of the neck and upper back, pinched the side of Plaintiff's breast and attempted to put her hand down Plaintiff's shorts. Shelby left bruises on Plaintiff's breast and bruises and bite marks down the middle of her upper back.

Defendant Officer Doe kept falling asleep at his station and did not protect Plaintiff when he allowed his worker, Connie Shelby, to go out of bounds and attack the Plaintiff. Shelby was a worker assigned in Building 516 where both she and Plaintiff were housed. Shelby's job assignment did not give her authorization to enter rooms other than her own. Shelby was on duty at the time of the incident and should therefore be held in the same regard as any employee working for CDCR. Officer Doe knew that despite the unit being an honor dorm, the inmates, including Shelby, were in prison for violent crimes. He knew there was a substantial risk that Plaintiff could be seriously harmed and he failed to respond reasonably to that risk to protect Plaintiff.

Captain Dunn was the Captain on the day of the incident. He was responsible for Officer Doe performing his job and was responsible for the operation of the yard and welfare of all inmates assigned to D-yard, which is where Plaintiff was assigned. Captain Dunn had forced Plaintiff to be rehoused in Building 516 despite her moving to a general population unit a few months before the incident. Captain Dunn did not monitor his employees in unit 516 to ensure that the safety protocols were being followed, especially when the staff was not the regularly assigned staff, as was the case on the day of the incident. He knew there was a substantial risk

---

for all his employees in the position of hiring authority. Warden Espinosa did little to monitor the welfare of the inmates of the facility and eventually lost her job due to misconduct. Warden Pallares now holds the position and so is named in this suit. Warden Pallares held no authority on the day of the incident, but J. Espinosa is no longer employed by CDCR.

that Plaintiff could be seriously harmed yet failed to respond reasonably to that risk to protect Plaintiff.

A roommate interrupted the attack and Shelby stopped the attack. Before Shelby left, she told Plaintiff that she would return and if Plaintiff told anyone what happened, she (Shelby) would not know what they were talking about. Plaintiff told a neighbor and friend about the attack and showed this friend her injuries, which should be verifiable via CCT camera footage.

Between June 18 and 23, Plaintiff's anxiety became progressively worse impacting her ability to sleep, work, and perform daily tasks. On June 23, (2018)[2] Plaintiff reported the incident to the Lieutenant on duty. Inmate Connie Shelby was taken into custody. On June 23, Plaintiff was given two 7219 unclothed examinations, verifying her injuries. The night shift officer was verbally angry with Plaintiff for the amount of work caused by packing up and inventorying Connie Shelby's property.

On June 24, (2018)[3], Plaintiff asked to be taken into protective custody after repeated threats by Connie Shelby's friends, but instead she was moved to another yard. The move landed Plaintiff into a room with more friends of Connie Shelby, who harassed Plaintiff. Plaintiff asked again to be moved into protective custody, and this time her request was granted.

Moving into protective custody involved another 7219 exam, a strip search before leaving the yard, and a second strip search once Plaintiff was in the protective custody building, which also housed death row inmates and those serving time for committing felonies in custody. She was also subjected to harassment while being processed to protective custody, with officers cursing at her, kicking the cage she was being held in, and telling her she was making things harder for herself by reporting the incident. They would say that all PREA[4] reports are bogus.

---

[2] Plaintiff alleges in the First Amended Complaint that the date she reported the incident was on June 23, 2022. (ECF No. 18 at 2 ¶ 22.) However, since Plaintiff filed the original Complaint on June 15, 2020, and she alleges that the incident happened in June 2018, the Court assumes that Plaintiff meant that she reported the incident on June 23, 2018, not June 23, 2022.

[3] See Footnote No. 1. It appears that Plaintiff meant 2018, not 2022.

[4] Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 *et seq.*

Plaintiff was held in protective custody until the middle of September. She was denied access to mental health care for almost a week. Connie Shelby was held in detention for less than a week.

Plaintiff requests monetary damages, including punitive damages, declaratory relief, a preliminary and permanent injunction ordering Connie Shelby to be kept in a facility separate from Plaintiff, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"

1  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting
Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.    Inmate as Defendant

Plaintiff names Connie Shelby, an inmate who was also incarcerated at CCWF, as a Defendant in this action. Plaintiff alleges that inmate Connie Shelby was a worker assigned in Building 516 where both she and Plaintiff were housed. Because Shelby was on duty at her job assignment at the time that Shelby allegedly raped Plaintiff in Plaintiff's cell, Plaintiff alleges that Shelby should therefore be held in the same regard as any employee working for CDCR.

Section 1983 claims do not lie against purely private entities or against persons who are not acting on behalf of the state. Patterson v. California Dep't of Corr. & Rehab., No. 122CV00138JLTBAMPC, 2022 WL 2541698, at *4 (E.D. Cal. July 7, 2022), report and recommendation adopted, No. 122CV00138JLTBAMPC, 2022 WL 3969631 (E.D. Cal. Aug. 30, 2022) (citing West v. Atkins, 487 U.S. 42, 58 (1988). Under § 1983, Plaintiff must show: (1) a violation of rights protected by the Constitution or created by federal statute; (2) proximately caused; (3) by conduct of a person; (4) acting under color of state law. Id. (citing see Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991)). A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. (citing West, 487 U.S. at 49) (quoting United States v. Classic, 313 U.S. 299, 236 (1941)).

For private parties to be acting under the color of state law, the act must be "fairly attributable to the State." Rios v. Dragon, No. 119CV1009ADAHBKPC, 2022 WL 16836567, at *4 (E.D. Cal. Nov. 9, 2022) (citing see Collins v. Womancare, 878 F.2d 1145 (9th Cir. 1989)

(finding a citizen's arrest group did not qualify as "acting under color of state law" for purposes of § 1983)(citing Lugar v. Edmondson Oil Co. Inc., 457 U.S. 922, 937 (1982)). According to Lugar, to find "acting under the color of state law" requires two elements to be satisfied: (1) the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible; and (2) the party charged with deprivation must be a person who may fairly be said to be a state actor. Id.

The ultimate issue in determining whether a person is subject to suit under section 1983 is whether the alleged infringement of federal rights is fairly attributable to the State (see, T.G. v Bd. of Cty. Comm'rs, 2020 US Dist Lexis 191164). The infringement must be caused by the exercise of some right or privilege created by the State, or by a rule of conduct imposed by the state or by a person for whom the State is responsible (T.G. supra). Additionally, the party charged with the infringement must be a person who may fairly be said to be a state actor. Thus, acts of persons in the ambit of their personal pursuits are clearly not acting under color of law (T.G. supra). Here, it is clear that inmate Connie Shelby, although an inmate worker at the time of the occurrence, was clearly acting in a personal pursuit and not at the direction, nor under the scope of her assigned duties. Hence she cannot be said to be a State actor acting under color of law.

Moreover, the fact that Shelby was an inmate on duty at her state prison job assignment when she raped Plaintiff does not cause Shelby's actions to be attributable to the State. Plaintiff has acknowledged that Shelby's job assignment did not give her (Shelby) authorization to enter rooms other than her own, so Shelby was not acting with power possessed by virtue of State law when she entered Plaintiff's room. Nor was Shelby's misconduct caused by the exercise of some right or privilege created by the State. As an incarcerated prisoner, Shelby cannot fairly be said to be a state actor. Shelby did not act under color of state law under any formulation of the governmental actor tests. Jackson v. Foster, 372 Fed.Appx. 770, 771 (9th Cir. 2010) (citing see Johnson v. Knowles, 113 F.3d 1114, 1118–20 (9th Cir.1997); Gettimier v. Burse, No. 2:13CV44HEA, 2015 WL 75224, at *5 n.3 (E.D. Mo. Jan. 6, 2015) ("The fact that a fellow

7

inmate is not a 'state actor' for purposes of § 1983 litigation is so fundamental as to not require citation."); Rigano v. Cty. of Sullivan, 486 F. Supp. 2d 244,256 n.15 (S.D.N.Y. 2007) ("Plaintiff also appears to bring a claim against the inmate defendants pursuant to 42 U.S.C § 1983. It is well-established that a § 1983 claim is only cognizable against a state actor and not a fellow inmate.").

Thus, Plaintiff cannot state a § 1983 civil rights claim against inmate Shelby, because Shelby is not a state actor. Accordingly, inmate Connie Shelby must be dismissed as a defendant in this case.

**B.     No Personal Participation – Warden Espinoza, Warden Pallares**

Plaintiff alleges that Warden J. Espinosa was the warden on duty at CCWF when the events at issue occurred and was legally responsible for the operation of CCWF and the welfare of all inmates at the prison. Since then, Warden Pallares has succeeded Warden Espinosa as warden. Plaintiff names Warden Pallares as Defendant in the First Amended Complaint, whereas Plaintiff previously named Warden Espinosa as Defendant in the original Complaint.

Plaintiff is advised that "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).

Each Defendant is only liable for his or her own misconduct, and Plaintiff must demonstrate that each Defendant, through his or her own *individual actions*, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676-77 (emphasis added). The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson, 588 F.2d at 743-44.

In the Complaint, Plaintiff fails to allege facts demonstrating that Warden Pallares or former Warden Espinosa personally acted against Plaintiff. Plaintiff fails to attribute any

personal act to either of the wardens. Therefore, Plaintiff fails to state any claims against Warden Pallares or former Warden Espinosa, and they should be dismissed from this case.

### C. Failure to Protect – Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his [or her] future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in

fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that s/he complained to prison officials about a specific threat to his/her safety. Mere negligence is not enough to state a claim of deliberate indifference. It is not enough to show that a prison guard merely failed to act reasonably. Courts have generally held that unexpected incidents are insufficient to establish a claim of deliberate indifference. (see, Curtis v. Hardin, 2017 US Dist Lexis 95629). Nothing in the Plaintiff's allegations, other than conclusory allegations such as Plaintiff's assertion that Officer Doe knew that inmates were in prison for violent crimes, or that Officer Doe knew there was a substantial risk that Plaintiff could be seriously harmed, demonstrate that the assault was anything other than an unexpected incident, or gives any indication that defendants know of and disregarded a risk of harm to Plaintiff.

In this case, the alleged deprivation -- being subjected to sexual assault -- is sufficiently serious. However again, Plaintiff has not alleged facts demonstrating that any of the Defendants knew that Plaintiff was at an excessive risk to her health or safety and yet deliberately ignored the risk, failing to protect Plaintiff from sexual assault. As for defendants Espinosa and Dunn, Plaintiff claims that both were aware that the "honor dorms" leave their doors unsecured all day, and defendant Dunn knew that Connie Shelby was given special access into rooms unescorted. However, these allegations are not sufficient to show that any of the Defendants were subjectively aware that Plaintiff was at excessive risk of sexual assault by Connie Shelby.

Therefore, Plaintiff fails to state a claim against any of the Defendants for failure to protect Plaintiff from sexual assault.

**D.     Harassment**

Plaintiff alleges that unnamed officers subjected her to strip searches when she was being confined in protective custody, kicking the cage where she was being held, discouraging her, and verbally harassing her. Plaintiff fails to state a constitutional claim against any of these officers for their behavior. Mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139

(9th Cir. 1987); accord Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996).  Plaintiff has not shown that any of the individual officers violated her constitutional rights by personally acting against her.

### E. Doe Defendant – Officer Doe

Plaintiff alleges that an unnamed officer (Officer Doe) was assigned to Building 516 on the day of the incident at issue in this case.  Officer Doe was responsible for the operation of the building and the welfare of the inmates of the unit.

"As a general rule, the use of 'John Doe' to identify a defendant is not favored," Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), because unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward.

Plaintiff fails to state any claim against Officer Doe in the First Amended Complaint.  Plaintiff fails to allege facts showing that Officer Doe personally participated in any conduct against Plaintiff.  Therefore, Officer Doe should be dismissed from this case.

### F. Request for Relief

Besides monetary damages, Plaintiff requests declaratory and injunctive relief and costs of suit.

**Declaratory Relief**

Plaintiff seeks a declaration that the acts and omissions described in the complaint violated her rights under the Constitution and law of the United States.  Declaratory relief should be denied because it is subsumed by Plaintiff's damages claim.  See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

**Injunctive Relief**

Plaintiff seeks a preliminary and permanent injunction ordering defendant Connie Shelby to be kept at a separate facility away from Plaintiff.

Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

18 U.S.C. § 3626(a)(1)(A).

Based on the nature of the claims at issue in this action Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of her federal rights.

## V. CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff's First Amended Complaint fails to state any claims upon which relief can be granted under § 1983 against any of the Defendants. In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with guidance by the Court. Plaintiff has now filed two complaints without alleging facts against any of the Defendants that state a claim under § 1983. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this case be dismissed with prejudice for failure to state a claim upon which relief may be granted under § 1983.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file

written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **November 20, 2022**                            **/s/ Gary S. Austin**
                                                 UNITED STATES MAGISTRATE JUDGE